```
              UNITED STATES DISTRICT COURT

              WESTERN DISTRICT OF LOUISIANA

                   LAKE CHARLES DIVISION

FERNEST REED III,                      CIVIL ACTION
        Appellant                      NO. CV09-00234

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER        JUDGE JAMES T. TRIMBLE
OF SOCIAL SECURITY,                    MAGISTRATE JUDGE JAMES D. KIRK
        Appellee
```

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is an appeal by Fernest Reed III ("Reed") from the denial of social security benefits.

Reed filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on November 15, 2005 (Tr. pp. 68, 71), alleging a disability onset date of March 1, 2002 (Tr. p. 87), due to "cancer, back problems, heart murmur, high blood pressure" (Tr. p. 91). Reed also filed applications for SSI on March 9, 2006[1] (Tr. p. 73) and December 8, 2006 (Tr. p. 77), and applications for DIB on December 8, 2006 (Tr. p. 80) and February 14, 2007 (Tr. p. 82).[2]

The November 15, 2005, DIB claim (and presumably the other DIB claims as well) was denied by the Social Security Administration

---

[1] The date is unclear, since the application is dated March 9, 2006, but states Reed applied for SSI on October 31, 2005 (Tr. p. 73).

[2] The ALJ states in his decision that he is disposing of Reed's November 22, 2006 application for DIB (Tr. p. 8). Since none of Reed's applications are dated November 22, 2006, the court presumes the ALJ is referring the November 15, 2005, application.

("SSA") on March 22, 2007 ("SSA") (Tr. p. 42).  There is nothing in the administrative record before this court disposing of Reed's SSI applications, which are not currently before this court on appeal.  Only Reed's DIB claim is before the court in this appeal.

A de novo hearing was held before an administrative law judge ("ALJ") on April 10, 2008 (Tr. p. 16), at which Reed appeared with his attorney, a vocational expert ("VE"), and a witness.  The ALJ found that, as of the date Reed's disability insured status expired on March 30, 2002, Reed suffered from severe impairments of "failed back syndrome and essential hypertension" (Tr. p. 10), had the residual functional capacity to perform the full range of medium work (Tr. p. 11), and could perform his past relevant work as a maintenance farm worker (Tr. p. 14).  The ALJ concluded that Reed was not under a disability as defined in the Social Security Act ("SSA") at any time through March 31, 2002, the date he was last insured (Tr. p. 15).

Reed requested a review of the ALJ's decision, but the Appeals Council declined to review it and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Reed next filed this appeal for judicial review of the Commissioner's final decision.  Reed raises the following issues for review on appeal (Doc. 5):

>    1. The ALJ erred in finding Reed had the residual functional capacity to perform medium level work.
>
>    2. The ALJ gave improper and insufficient weight to the testimony of the claimant as to the type and level of work he could perform.

The Commissioner filed a brief in response to the appeal (Doc. 6). Reed's appeal is now before the court for disposition.

## Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420,

1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law.  Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Summary of Pertinent Facts

In March 1999, Reed's blood pressure was 182/114; Reed was told to diet, exercise, and take Atelnolol (Tr. p. 192).  In April 1999, Reed admitted he sometimes forgot to take his Atenolol; he

was diagnosed with hypertension and hypercholesterolemia, and put on a low salt, low cholesterol diet and told to exercise (Tr. p. 192). In May 2000, Reed complained that his right knee had been popping out of place intermittently for a couple of months and buckling (Tr. pp. 193-194); Reed underwent excision of thrombosed hemorrhoids (Tr. p. 193).

In November 2000, Reed's right knee was x-rayed and found to be normal (Tr. p. 202). Reed also reported bright red blood from his rectum, for which a colonoscopy was scheduled (Tr. p. 200). Reed reported intermittent mid-right back pain radiating down into his right ankle (Tr. p. 200). Reed was diagnosed with hypertension that was only fairly well controlled because he was taking only half of the prescribed dose; Reed was told to take the full dose and a colonoscopy was recommended (Tr. p. 200).

Also in November 2000, Reed complained of his knee "popping out of place" (Tr. p. 194). It was noted that Reed had a "snapping knee-iliotibial band" for which he was prescribed NSAIDs (nonsteroidal anti-inflammatory medications) (Tr. pp. 199-200). Reed reported that an orthopaedist told him surgery would not help his knee; Reed also stated that taking ibuprofen helped (Tr. p. 199).

In January 2001, Reed was seen at the Alexandria, Louisiana VA Medical Center for intermittent rectal bleeding (Tr. p. 168); his blood pressure was 158/100 (Tr. p. 173). A colonoscopy and polypectomy were performed in February 2001 (Tr. pp. 169-171, 174-189, 217, 234-257).

In May 2001, Reed's blood pressure was 164/118 (Tr. p. 163). Reed complained of back and knee pain with excessive activity, reported his pain was relieved by stretching exercises and Aleve, and said he had less strength, decreased activity levels, and decreased libido (Tr. pp. 164-165). Reed was diagnosed with moderate hypertension, overweight, back and arm pain, chest pain/pressure a week ago, and constipation and hemmorhoids (Tr. p. 163). An EKG was planned and Reed was placed on a high fiber, low salt, low calorie diet (Tr. p. 164). In June 2001, Reed's blood pressure was 140/92 and he was feeling better on his new medication; Reed also reported that Piroxicam helped his pain very much, but he had a lot of downward change in his energy level (Tr. pp. 161-162).

In December 2001, Reed was treated at the Alexandria VA Medical Center for hypertension, hypercholesterolemia, and hyperlipidemia (Tr. p. 152). Reed's blood pressure was 180/108, so Adalat was added to his hypertension medications (Tr. p. 158). Reed reported muscle spasms which would "come and go," which exercised helped (Tr. p. 159).

In May 2002, Reed was treated at the Alexandria VA Medical Center for hypertension, hypercholesterolemia, and hyperlipidemia (Tr. p. 152). Reed was 53 years old, 6'4" tall, weighed 244 pounds, his hypertension was reasonably controlled (154/98), his cholesterol was elevated at 226, and his lipids were acceptable (Tr. pp. 153-154). Reed was continued on his medications of Atenolol, Nifedipine, and Terazosin Hcl (Tr. p. 152). Reed

6

reported his pain was a "0" on a scale of 1 to 3 (Tr. pp. 145, 154).[3]

At his 2008 administrative hearing, Reed testified that he was 60 years old (Tr. p. 24), was diagnosed with multiple myeloma cancer in October/November 2005, and that he was currently undergoing treatment, including chemotherapy and steroids (Tr. pp. 20-21). The cancer had caused spinal fractures, which limited Reed's ability to lift, sit, stand, bend and drive, and for which he wore a brace (Tr. pp. 21-22).

Reed testified that he has an eight grade education and can read some, but cannot read a newspaper all the way through (Tr. p. 30). Reed has not had any special training (Tr. p. 30). Reed testified that he did sandblasting and painting in 1992 (Tr. pp. 24, 109), maintenance in a welding shop in 1996 through 1998 (Tr. p. 24, 109), and helped prepared a crawfish pond in 2001 (Tr. p. 26). Reed testified that, when he worked on the farm helping to prepare the crawfish pond, he drove a tractor which caused him "some trouble" with his back (Tr. p. 26). Reed testified that he can no long do high work sandblasting and painting because he cannot get around as well as he used to (Tr. p. 26).

Reed testified that he had back surgery in 1993 at L3, 4, and 5; he did not have a fusion (Tr. p. 25). Reed had hypertension, rectal bleeding, and knee problems in 2001; Reed testified that his knee still bothers him sometimes (Tr. pp. 27-28). Reed testified

---

[3] The medical records are duplicated in the administrative record at pages 205-257.

that a colonoscopy was performed and polyps were removed (Tr. p. 28).

Reed testified that, in 2002, he was unable to work because of his hypertension and back problems; he also had problems with his knees popping and buckling (Tr. p. 28). Reed testified that hypertension made him feel weak and disoriented (Tr. p. 28). Reed testified that he has not worked since 2002 because of backache and weakness (Tr. p. 29).

Reed's cancer was diagnosed in 2005 (Tr. p. 30), but he started feeling bad from the cancer about eight months before it was diagnosed (Tr. p. 30). In 2008, about a month before the administrative heading, Reed was told his back was fractured (Tr. p. 31).

Reed testified that his new back problems are different from his old back problems, and that his new back problems started in 2002 (Tr. p. 31). However, the weakness Reed feels from the cancer is different from the weakness caused by his hypertension (Tr. p. 31), and the weakness from the cancer began in about late 2001 or 2002 (Tr. p. 31).

Wendell Craig Durio ("Durio"), Reed's nephew testified that, in 1999 and 2000, he saw Reed two to four times a week, and he saw Reed regularly after Reed returned to Louisiana in 2001 and 2002 (Tr. pp. 33-34). Durio testified that Reed was a very strong man who became unable to do anything, even bending down or walking (Tr. p. 35). Durio testified that, even in 2002, Reed was unable to go fishing or hunting anymore, sometimes because of his pain

8

medication and sometimes because he was hurting and could not get out of bed (Tr. p. 35). Durio testified that Reed was never the same and started going downhill after his back surgery (Tr. p. 35).

A vocational expert ("VE") testified that Reed's past work as a sandblaster was unskilled, heavy work, his work as a fabrication shop helper was unskilled, medium work, and his farm work was unskilled, medium work (Tr. p. 37). The VE testified that an individual who can perform the full range of medium work could work in shop maintenance or as a farm worker (Tr. p. 37).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Reed (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial

burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Reed has not engaged in substantial gainful activity since March 1, 2002, that his disability insured status expired on March 31, 2002, and that, at that time, he had severe impairments of failed back syndrome and essential hypertension, but that he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 10-11). The ALJ then found that, as of March 31, 2002, Reed was still able to perform the full range of medium work (Tr. p. 11), and therefore was able to do his past relevant work as a farm worker (Tr. p. 14). The sequential analysis thus ended at Step 4, with a finding that Reed was not disabled at any time through March 30, 2002 (Tr. p. 15).

### Law and Analysis

Residual Functional Capacity

The ALJ's finding that Reed could perform his past relevant work as a farm worker as of March 30, 2002, indicates the ALJ's conclusion that Reed did not meet his burden of proving that he could not return to his past work. A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical

assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations.  20 C.F.R. §404.1545, §416.945.  Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy.  <u>Herron v. Bowen</u>, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein.  Also, <u>Babineaux v. Heckler</u>, 743 F.2d 1065, 1067 (5th Cir. 1984).  The Commissioner has the burden to establish a claimant's residual functional capacity.  <u>Leggett v. Chater</u>, 67 F.3d 558, 565 (5th Cir. 1995).

Reed contends the ALJ erred in finding he can perform medium level work.  Reed argues that he has multiple myeloma, that there is insufficient medical evidence from 2002, and the ALJ improperly found that, during the teleconference hearing, Reed appeared to be in little discomfort and to exaggerate his symptoms.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. <u>Harper v. Sullivan</u>, 887 F.2d 92, 96 (5th Cir. 1989), citing <u>Owens v. Heckler</u>, 770 F.2d 1276, 1281 (5th Cir. 1985).  The mere existence of pain is not an

11

automatic ground for obtaining disability benefits.  The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence.  <u>Fortenberry v. Harris</u>, 612 F.2d 947, 950 (5th Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1529(c)(4).  Subjective complaints of pain must be corroborated by objective medical evidence.  <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2000).  Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment.  <u>Chambliss</u>, 269 F.3d at 522.

The ALJ's decision on the severity of pain is entitled to considerable judicial deference.  <u>James v. Bowen</u>, 793 F.2d 702, 706 (5th Cir. 1986); <u>Jones v. Bowen</u>, 829 F.2d 524, 527 (5th Cir. 1987).  Such a credibility determination is within the province of the ALJ.  <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991); <u>Wren v. Sullivan</u>, 925 F.2d 123, 128-29 (5th Cir. 1991).  Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints.  <u>Falco v. Shalala</u>, 27 F.3d 162, 163-64 (5th Cir. 1994).

Reed's burden was to prove that he was disabled within the meaning of the Social Security Act. That requirement means that he must show a "medically determinable" impairment and that he is unable "to engage in substantial gainful activity." <u>Greenspan v. Shalala</u>, 38 F.3d 232 (5th Cir. 1994), cert. den., 514 U.S. 1120, 115 S.Ct. 1984 (1995); 20 C.F.R. §423(d)(1)(A) and (d)(3); 20 C.F.R. §404.1508; 42 U.S.C. §423(d)(1)(A).

In the case at bar, Reed complains about the ALJ's comments concerning his demeanor at the teleconference hearing. Reed points out that the ALJ stated in his decision, "During the hearing, the claimant was observed to be in little discomfort and appeared to exaggerate his symptoms. In making this assessment, it is important to note that the claimant's demeanor is just one of the factors in assessing the claimant's credibility." The ALJ's statements are confusing for two reasons: (1) Reed's condition prior to March 31, 2002, not his current condition, was at issue, so his appearance and comfort level during the hearing were irrelevant to the issues being decided, and (2) Reed was undergoing treatment for Stage 4 multiple myeloma at the time of the teleconference hearing, and had a fractured back, so it is very unlikely that Reed was "exaggerating" his current symptoms.

However, the ALJ correctly noted that the objective medical evidence prior to March 31, 2002, documented only intermittent complaints of mid-back pain by Reed; there was no evidence of diagnostic imaging or recommendations for physical therapy or surgery (Tr. p. 13). As stated above, complaints of pain must be

13

supported by objective medical evidence. Although Durio's testimony supported Reed's complaints of back pain, his testimony does not make up for the lack of objective medical evidence to support Reed's claim of disabling pain. Reed did not prove he suffered from pain that was "constant, unremitting and wholly unresponsive to therapeutic treatment." In fact, Reed reported very good pain relief from Piroxicam.

The ALJ also considered the medical evidence of hypertension that was fairly well controlled with medication (Tr. p. 13). The ALJ considered both Reed's back pain and hypertension and found they were not inconsistent with the ability to perform medium level work. It is noted that no physician limited Reed's ability to perform work as of March 30, 2002.

Reed also argues there are insufficient medical records from the time frame at issue. The lack of medical records in this case cannot be ascribed to the ALJ; it was Reed's burden to prove he had a medically determinable impairment that precluded him from working. If Reed had required more medical treatment, he would have had more medical records; the fact that he did require more medical treatment tends to indicate he did not suffer disabling pain. Compare, Dominguez v. Astrue, 286 Fed.Appx. 182, 187 (5th Cir. 2008); Dale v. Chater, 103 F.3d 127 (5th Cir. 1996)("the ALJ properly concluded the lack of objective medical evidence did not corroborate Dale's complaints of disabling pain").

Although Reed argues there is no evidence to indicate he was able to perform a full range of medium work in 2002, Reed's

14

argument would improperly shift the burden of proof to the Commissioner at Step 4 of the sequential analysis. Under the five step sequential analysis, the burden of proof shifts to the Commissioner only to establish residual functional capacity at Step 5, *after* the claimant carries his burden of proving he is unable to perform his past relevant work at Step 4. In this case, Reed failed to carry that burden.

Therefore, Reed did not carry his burden of proving that disabling pain prevented him from performing his past relevant work as of March 31, 2002. Substantial evidence supports the ALJ's/Commissioner's conclusion that Reed was not disabled as of March 31, 2002.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Reed's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 2nd day of November, 2009.

```
                                    _____
                                    JAMES D. KIRK
                                    UNITED STATES MAGISTRATE JUDGE
```